1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MOSHE ISAAC STEIN,

11           Petitioner,                    No. CIV S-05-1592 GEB KJM P

12      vs.

13   DIRECTOR OF CORRECTIONS, et al.,

14           Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16           Petitioner is a state prison inmate proceeding pro se with a petition for a writ of

17   habeas corpus under 28 U.S.C. § 2254, alleging that the trial court improperly denied four of his

18   ten motions for the appointment of new counsel and two motions for self-representation.

19   I.  Background

20           In exchange for the prosecutor's agreement to dismiss certain enhancements and

21   an agreement that the United States Attorney would not pursue certain charges, petitioner agreed

22   to submit the issue of his guilt to the state trial court, to be determined on the tapes and

23   transcripts of law enforcement interviews with the victims and on petitioner's testimony and

24   other defense evidence.  The court found petitioner guilty of six counts of lewd and lascivious

25   acts with children under the age of fourteen, one count of indecent exposure and a misdemeanor

26   charge of possession of child pornography, and sentenced him to a total term of sixteen years.

1

1    While the state criminal proceedings were pending, petitioner filed the instant

2    action, which petitioner labeled a petition for a writ of habeas corpus under 28 U.S.C. § 2241, but

3    was in fact an amalgam of some claims appropriately brought in a civil rights action, some

4    claims that could only be raised in a § 2254 petition after trial, and a challenge to the alleged

5    denial of a speedy trial, the latter the only ground properly raised in a pretrial habeas petition.

6    See Pet. (Docket No. 1).  Petitioner also asked for a stay of his state criminal proceedings.  Id.;

7    see also Request for Stay (Docket No. 6).  State trial counsel's refusal to seek a stay in Superior

8    Court because of the pendency of this action became one of the bases for petitioner's many

9    motions for the appointment of new counsel, as discussed in further detail below.

10    The original petition was dismissed, but petitioner was given leave to file an

11    amended petition.  During this time, petitioner had been convicted and sentenced to state prison.

12    He nevertheless prepared an amended petition, which this court recommended be dismissed

13    because of the pendency of petitioner's state appeal.  See Findings and Recommendations

14    (F&Rs) (Docket No. 15).  This recommendation was vacated after petitioner filed objections,

15    alleging that the direct appeal process in the state court had concluded; this court then directed

16    the warden to respond to the petition.  See Order Vacating F&Rs (Docket No. 22).

17    Respondent filed a motion to dismiss, asserting that the amended petition

18    contained both exhausted and unexhausted claims.  This court recommended that the motion be

19    granted and that petitioner be ordered to file a petition containing only exhausted claims, a

20    recommendation adopted by the district court.  See Findings and Recommendations and Order

21    (Docket Nos. 31 & 32).

22    The second amended petition was filed on September 12, 2008.  See Second Am.

23    Pet. (Docket No. 33).  It alleges that the court erred in denying petitioner's four motions to

24    replace Attorney Ruffcorn with new appointed counsel and his two motions to represent himself.

25    As the state Court of Appeal recognized, the facts of the offenses are not relevant to the issues

26    raised in this petition.

II.  Standards Under The AEDPA

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

---

[1]  Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 119-20 (2007).

1  fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

2  (2002).

3          The court will look to the last reasoned state court decision in determining

4  whether the law applied to a particular claim by the state courts was contrary to the law set forth

5  in the cases of the United States Supreme Court or whether an unreasonable application of such

6  law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

7  919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

8  of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

9  must perform an independent review of the record to ascertain whether the state court decision

10  was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

11  words, the court assumes the state court applied the correct law, and analyzes whether the

12  decision of the state court was based on an objectively unreasonable application of that law.

13          "Clearly established" federal law is that determined by the Supreme Court.

14  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to

15  look to lower federal court decisions as persuasive authority in determining what law has been

16  "clearly established" and the reasonableness of a particular application of that law.  Duhaime v.

17  Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003),

18  overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at

19  782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court

20  precedent is misplaced).

21  III.  Motions To Replace Appointed Counsel

22          Over the course of the criminal proceedings against him, petitioner made ten

23  motions for the appointment of new counsel under the authority of People v. Marsden, 2 Cal.3d

24  118 (1970).  Three motions were granted: those heard on July 29, 2003, August 5, 2004 and

25  December 3, 2004.  CT 106, 328, 363.  Three others not at issue here were denied: October 2,

26  2003, June 10, 2004, and November 16, 2004.  CT 111, 322, 361.  On appeal and in these

proceedings, petitioner alleges that the trial court's refusal to grant his four motions to remove

Attorney Ruffcorn deprived him of the effective assistance of counsel.

A.  Background

The Shasta County Public Defender's Office, and specifically, attorney Max

Ruffcorn was appointed to represent petitioner on December 8, 2004.  CT 365.  On January 31,

2005, the parties appeared for a settlement conference.  CT 432.  According to Ruffcorn,

petitioner rejected an offer that contemplated an eight year sentence along with the dismissal of

the pending federal charges.  RT 259.  Petitioner also rejected a "slow plea," which would have

preserved what counsel believed was an advantageous plea bargain.  RT 263.  Counsel observed:

> Mr. Stein today asked me to consider invoking Penal Code Section
> 1368 in terms of his mental competence.  And I read the code again
> this afternoon in that regard and it would require me to announce to
> the court that I believed and had a doubt about his competence. . . .
> I informed Mr. Stein that . . . I don't believe that he's incompetent.
> For the same reasons he's rejected the offer in terms of being the
> truth teller, I'm not – I'm not interested in fibbing to this court.

RT 262.  According to counsel, petitioner "directed me to file writs," but counsel declined to do

so.  RT 263.

On February 8, 2005, petitioner did enter a no-contest plea to the charges.

CT 489-511.  One of the conditions of the plea was that the "appeal rights [would be] reserved

regarding speedy trial and other constitutional rights."  CT 489.  The court allowed petitioner to

withdraw the plea when the parties realized the plea would foreclose any appeal of the speedy

trial and other constitutional issues.  CT 547.

The case finally went to a court trial, submitted in part on the tapes and transcripts

of interviews with the victims and other documentary evidence from the prosecution and in other

part on the live testimony of defense witnesses and petitioner himself.  Petitioner gave up his

right to a jury trial and to have the victims testify in exchange for a sixteen year maximum

sentence.  CT 815-818.  This disposition was engineered by Ruffcorn, whose actions petitioner

repeatedly challenged in the four Marsden motions at issue here.

B.  Hearing Of February 4, 2005

On February 4, 2005, petitioner asked for the appointment of new counsel. RT 276.  With the courtroom cleared, the judge asked petitioner to explain the basis for his request.   RT 278.

Petitioner contended that counsel had "recommended most strongly that I accept the plea bargain deals without considering all the ramifications of and alternatives to this action." RT 279.  He argued that Ruffcorn failed to consider the implications of the Ninth Circuit case, McNeely v. Blanas, 336 F.3d 822 (9th Cir. 2003),[2] and the possibility of pursuing a pretrial federal habeas petition under 28 U.S.C. § 2241.  RT 279.  He suggested that Ruffcorn did not visit him at the jail but rather only in the holding cell before court.  Id.  He also alleged that counsel had lied to him about complying with discovery obligations.  RT 280.

Most of petitioner's ire was saved for Ruffcorn's revelation in open court that petitioner mentioned an evaluation of his competence to stand trial – a 1368 proceeding. Petitioner explained that one of his former lawyers and a judge who had heard proceedings in the case wondered whether he was competent and that he was suffering from "stress related self-doubt."  RT 280.  He was "amazed when Mr. Ruffcorn took my words out of context and blurted them out in open court."  Id.  He characterized this as "immoral" and "in contravention of an attorney's very course of existence, which is the defense of his client."  Id.  Because of this betrayal of confidence, he no longer trusted Ruffcorn, nor could he do so in the future.  RT 281.

Ruffcorn explained that petitioner's rejection of the eight-year offer was, in essence, "betting his life," because it was "too risky" with the lengthy sentence petitioner faced if found guilty.  RT 284, 285.  Accordingly, his "advice has been strong to resolve this case."

/////

/////

_____

[2]  This case found that the pretrial detainee's constitutional speedy trial rights had been violated by a five-year detention with neither preliminary hearing nor trial.

1    RT 285.  He also noted that he had visited petitioner seven times in the jail, as shown by the jail's

2    records.  RT 286, 288.[3]

3            The judge rejected petitioner's dissatisfaction with Ruffcorn's failure to file a

4    federal habeas petition because "the time is not ripe yet to file a federal habeas."  RT 288.  He

5    also recognized that Ruffcorn had "got up to speed quickly" and filed "two sizable motions

6    quickly."  Id.  The court advised petitioner that counsel had a duty to convey any plea offer and

7    particularly this one, which was a "marvelous offer."  RT 289.  Ultimately the court found that

8    the motion was "one more example of his desire not to go to trial.  And that's simply what I view

9    this Marsden motion here today as is I don't want to go to trial.  I'm going to try to get rid of this

10   lawyer."  RT 288.

11           C.  Hearing of February 8, 2005

12           Petitioner renewed his motion in front of a different judge, beginning with his

13   declaration that "I do not trust this attorney" because he "has violated confidentiality."  RT 295.

14   He told the judge he had not understood what a 1368 hearing was, but was feeling "self-doubt"

15   and so mentioned it to Ruffcorn.  Then Ruffcorn "took my words out of context and blurted them

16   out in open court, thereby violating confidentiality."  RT 297.

17           This exchange followed:

18   MR. RUFFCORN: . . . Prior to having a hearing as referenced on
     January 31st, I went back to speak with my client.  He told me he
19   wished to – for me to invoke the provisions of Penal Code section
     1368.  I said "All right", went out and referenced the Penal Code
20   that was in the courtroom; it had been a while since I read that
     section, and it hadn't changed much if at – at all.  But I basically
21   went back to Mr. Stein and reported that it, in summary, allows for
     the Court, on its own motion, based on upon evidence, to invoke
22   those provisions as it relates to a doubt as to the defendant's
     competency, or the defense counsel can, if he or she . . .believes
23   that the client is not competent within . . . the meaning of that
     section.  After I read that, I reported to Mr. Stein that I – I couldn't
24   make that representation to the Court . . . .  And thereafter it was

25   _____

26          [3]  There are two pages numbered 288; all references are to the first such page unless
     otherwise noted.

                                                     7

really a matter of my reporting –after reporting that to Mr. Stein, again this is in the holding cell, at his direction this matter was placed on the record.

It went simply like, If you'd like, I will put that on the record and – so that you have a record of these proceedings.  And making a record has been consistent with his wishes all along.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

THE COURT: At Mr. Stein's request you informed the Court that Mr. Stein had requested that 1368 proceedings be invoked.

MR. RUFFCORN: Yes, and I believe that's a matter of record too I believe for the same reasons, simply announcing I'm putting this on the record so it's on the table so to speak, a matter of record. And – and that I couldn't make the – make the assertion, declaration, what have you, that I believed he was not competent within the meaning of the law.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

THE COURT: Okay.  So Mr. Stein?

THE DEFENDANT: At no time did I request that Mr. Ruffcorn announce to the Court or anybody else that I had discussed anything with him.  He did that of his own volition without any help from me.

RT 298-300.[4]

In addition, petitioner insisted that Ruffcorn had lied to him about having disclosed exculpatory evidence and alibi witnesses to the prosecution and had failed to pursue petitioner's right to a speedy trial "which has been denied repeatedly."  RT 297, 301.  Finally, petitioner said he could not trust Ruffcorn after Ruffcorn told him that the denial of a speedy trial

/////

---

[4]  Counsel gave a similar explanation during a subsequent hearing on one of petitioner's motions for self-representation.  RT 447-449 ("The core issue there was, according to Mr. Stein, that under the code, while the court could make a finding on its own motion, that defense counsel would have to declare that there was a doubt, and I wasn't willing to.  I couldn't do that, so that led to, well, let's get that on the record because Mr. Stein wants things on the record.").

was a matter for appeal "after you are convicted and you will be convicted," but had previously

told petitioner he believed in petitioner's innocence.  RT 303.

The court denied the motion:

> . . . I think an attorney has a duty to advise the client of the risks
> and rewards, the benefits and disadvantages, because there is
> always generally the – up to trial. . . still the opportunity to resolve
> cases. . . . And the lawyer has a duty to advise the client of what the
> options are and the lawyer's assessment of the prospects. . . .
>
> So, Mr. Stein, Mr. Ruffcorn's previous . . .expression of
> confidence in your innocence and his statement, "You will be
> convicted," may have cased [sic] you to lose trust in Mr. Ruffcorn,
> but it's not a basis to remove the Public Defender.  So–and further
> I'm finding that there was no violation of confidentiality in the
> statement for the record of your request that 1368 proceedings be
> initiated or words– something to that effect that you had made that
> request.

RT 305.

D.  Hearing of September 9, 2005

At still a later hearing, petitioner again attempted to argue what he perceived to be

the betrayal of confidence, but when the court learned that there had been two Marsden hearings

since the alleged breach, it declined to address this ground.

Petitioner then explained:

> . . . [S]ince the last Marsden, . . . Mr. Ruffcorn chortled and said to
> me in court . . . ha, ha, the gigs [sic] up.  You are finished.  You are
> going to prison.  Then he colluded with the district attorney,
> knowing full well that I was suffering from influenza, post-
> traumatic stress disorder and the trauma of having a very dear
> friend go through the process of dying in the hospital.  He proposed
> a total unworkable deal. . . .
>
> When I partially recovered my health, I withdrew that deal. . . .

RT 477.  Thereafter, Ruffcorn was late to two hearings and convinced the court to give petitioner

a September trial date because of his workload, without revealing to the court or to petitioner that

he had a vacation scheduled.  RT 479.

/////

1        Counsel agreed that he had not told petitioner he was taking some vacation in

2   August, but said he did not know he would be able to take any vacation until the last minute,

3   when some cases settled.  RT 484-485.  He denied laughing at petitioner or using the expression

4   "the gig is up."  RT 485.  He agreed that petitioner's plea was withdrawn, not because a

5   combination of factors hampered petitioner's ability to understand it, but because one condition

6   of the bargain was illegal.  RT 487.

7        After hearing that counsel had taken eight vacation days, the court said, "I don't

8   find it to be any type of poor representation for you that he took that many days off in August."

9   RT 481.  In addition, the court found that even if the plea was entered when petitioner was ill,

10  "that matter has been erased, deleted.  You've been allowed to withdraw your plea."  RT 489.

11       Petitioner persisted that "[t]he whole reason the plea was entered was because Mr.

12  Ruffcorn went and called a deal together with the prosecution."  Id.  The court observed, "[a]s he

13  is supposed to do, if the prosecution will talk."  Id.

14       Petitioner also indicated that he asked counsel to seek a stay of the criminal

15  proceedings because he had filed a federal habeas petition "on multiple grounds."  RT 481.

16  Ruffcorn agreed that he did nothing when petitioner asked him to seek a stay, because he

17  believed a stay would have to come from the federal court and he did not believe the superior

18  court "would have any interest in staying proceedings until . . . some federal petition was sorted

19  out. . . ."  RT 488-489.  The court said that "[i]f the federal court wishes to stay proceedings . . . –

20  the federal court would do that," and "[s]o how is this a problem that Mr. Ruffcorn created?

21  He's not acting as your attorney in the . . . federal court; is he?"  RT 482.

22       Finally, petitioner complained that Ruffcorn had waived petitioner's right to a

23  speedy trial "without being specifically authorized to do so."  RT 490.  The court rejected this as

24  well, noting that each time there was a waiver of speedy trial, petitioner had "been in court to

25  hear it."  Id.

26  /////

1    The court ultimately found that petitioner has "been well served by Mr. Ruffcorn.

2    I think you'll continue to be well served by Mr. Ruffcorn."  RT 491.

3    E.  Hearing of September 14, 2005

4    On the day set for the beginning of jury trial, petitioner again requested to relieve

5    counsel.  The court asked "what has happened since September 9th, since the last hearing, that

6    you believe Mr. Ruffcorn has done that is ineffective assistance of counsel."  RT 496.  Petitioner

7    claimed he had not had time to prepare for the hearing on September 9 and had "missed a lot of

8    points."  RT 497.[5]

9    First, he contended that Ruffcorn "has persistently refused to address the issue of

10   denial of a speedy trial."  Id.  The court responded that this "has been a theme that has just gone

11   on and on through this lengthy odyssey of almost three years in this court system. . . ."  Id.  When

12   pressed, petitioner conceded he had filed a petition for a writ of mandate in the Court of Appeal

13   and pursued the issue in the California Supreme Court.  Id.

14   Petitioner again mentioned Ruffcorn's refusal to seek a stay of the proceedings

15   pending resolution of his federal writ; the trial court again told him that he would have to seek a

16   stay in federal court.  RT 500-502.

17   In addition, petitioner claimed counsel was ineffective for refusing to seek this

18   judge's disqualification "for gross prejudice in the past."  RT 503.  Counsel noted he could not in

19   good faith allege that petitioner would be unable to get a fair trial from this judge.  RT 510.

20   Petitioner complained that counsel had "persistently. . . refused to give me access

21   to any documentation, any transcripts on anything," that he had not subpoenaed the stepfather of

22   one of the victims, who might testify that the victim had recanted, and was not "going to bother

23   about alibi. . . ."  RT 505-507.  Ruffcorn explained that witness Ray Moody would testify that he

24

25   [5]  Petitioner repeated his motion to disqualify on the record; it was denied.  CT 815; RT 494-495.  Ultimately, however, petitioner proceeded to a court trial on the transcripts of the victims' statements, as noted above, in front of Judge McEachen.  CT 816.  On the record, he agreed that Judge McEachen could be fair.  CT 816; RT 546-547.

26

1  and petitioner were out of the state during some of the time periods alleged in the information

2  and that Ruffcorn had told petitioner that despite this expected testimony, the prosecutor could

3  amend the count to conform to the proof at trial.  RT 508.  Ruffcorn also noted he had prepared

4  an order to produce the incarcerated stepfather, but that he was not sanguine that the man would

5  testify against any family member.  RT 506-507.

6          Close to the end of the hearing, the following exchange occurred:

7          THE DEFENDANT: . . . I can't trust this man.  He's just said here
          in this court that he has excluded me from his decision-making . . .
8          in this matter.

9          THE COURT: Well, he does make those decisions, Mr. Stein.
          You are not the attorney of record.  Mr. Ruffcorn is your attorney
10         and he makes those decisions.  That's his job.

11 RT 509.

12         F.  The Court Of Appeal

13         The Court of Appeal rejected petitioner's claims that these Marsden motions were

14 improperly denied:

15         Under the totality of the circumstances, we find no abuse of
          discretion in the trial court's finding on each of the four occasions
16         defendant failed to show that a failure to replace appointed counsel
          would substantially impair his right to assistance of counsel.
17
          First, the trial court resolved in counsel's favor all credibility
18         questions, such as whether counsel conducted a sufficient number
          of meetings with defendant, breached defendant's confidences or
19         made disparaging comments to him. We defer to those findings,
          and find no error in the court's conclusion, based on counsel's
20         representation, that their relationship had not irretrievably broken
          down.
21
          Second, the court inquired into the other bases for defendant's
22         asserted lack of "trust" in counsel and, generally, found them to be
          based on defendant's misunderstandings of the proceedings, such
23         as whether counsel had advanced defendant's position that he had
          been denied the right to a speedy trial or whether counsel was
24         obliged to advocate in federal court for a stay of trial proceedings.
          A trial court "need not conclude that an irreconcilable conflict
25         exists if the defendant has not tried to work out any disagreements
          with counsel and has not given counsel a fair opportunity to
26         demonstrate trustworthiness."

                                           12

1
2
3
4
5

Finally, the court also indicated that defendant's professed lack of "trust" in his counsel had become a routine complaint in his effort to change counsel and delay trial. In denying a different motion by defendant to substitute counsel (from which defendant does not appeal), the court stated: "Mr. Stein, you haven't trusted any of your lawyers. Why should I think that number eight would be any different or number nine or ten[?] You've made that declaration because you have ... developed the ground work, laid the land and such that no attorney can be assigned to your case who can do what you want and thereby gain your trust."

6
7
8
9

Nothing in the record shows that counsel and defendant were in irreconcilable conflict, that counsel was incompetent or that he would not provide adequate representation. The court acted reasonably in denying the four Marsden motions identified in defendant's brief.

10   People v. Stein, 2006 WL 3493052 at 4 (Cal. Ct. App. 3d Dist. 2006) (citations omitted).

11      G.   Analysis

12         In Morris v. Slappy, 461 U.S. 1, 13-14 (1983), the Supreme Court held that the

13   Sixth Amendment guarantee of the right to counsel and to effective assistance of counsel does

14   not include a right to "a 'meaningful relationship' between an accused and his counsel."  Relying

15   on Morris, the Ninth Circuit has realized that "not every conflict or disagreement between the

16   defendant and counsel implicates Sixth Amendment rights."  Schell v. Witek, 218 F.3d 1017,

17   1027 (9th Cir. 2000) (en banc).  The right to effective assistance may be compromised, however,

18   if there is a "breakdown of a relationship between attorney and client from irreconcilable

19   differences. . . ."  United States v. Moore, 159 F.3d 1154, 1158 (9th Cir. 1998).  The "[l]oss of

20   confidence by the defendant in his counsel weighs heavily in the defendant's favor when he seeks

21   to substitute counsel," unless the breakdown in the relationship flows from a defendant's own

22   /////

23   /////

24   /////

25   /////

26   /////

13

conduct.  Hudson v. Rushen, 686 F.2d 826, 832 (9th Cir. 1982).  As the Ninth Circuit has

explained:

> [T]he basic question is simply whether the conflict between Schell
> and his attorney prevented effective assistance of counsel. . . . It
> may be the case, for example, that because the conflict was of
> Schell's own making, or arose over decisions that are committed to
> the judgment of the attorney and not the client, in fact he actually
> received what the Sixth Amendment required in the case of an
> indigent defendant . . . .

Schell, 218 F.3d at 1026; see also Romero v. Furlong, 215 F.3d 1107, 1114 (10th Cir. 2000) ("A

breakdown in communication warranting relief under the Sixth Amendment cannot be the result

of a defendant's unjustifiable reaction to the circumstances of his situation.").

        To determine whether the Sixth Amendment has been violated as a result of the

denial of a motion to substitute counsel, the court must examine the adequacy of the inquiry

below, the extent of the conflict and the timeliness of the motion to substitute counsel.  Stenson

v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007).  Neither party takes issue with the timeliness of

the motions and petitioner does not argue that any of the four inquiries were inadequate.  See

Second Am. Pet. (Docket No. 33) at 3-4; Mot. of Addendum (Addendum) (Docket No. 34) at 3-

4.  Petitioner's challenge focuses on the alleged breach of confidentiality that occurred when

Ruffcorn told the court that petitioner asked him to declare a doubt about his competence to stand

trial.  Second Am. Pet. at 5-8; Addendum at 5-9.  "A showing that appellant's appointed attorney

had disclosed confidential defense matters . . . which would damage the defense would have

amounted to 'good cause' for not proceeding to trial with the same counsel."  United States v.

Young, 482 F.2d 993, 995 (5th Cir. 1973).

        The Ninth Circuit considered a similar situation in Plumlee v. Masto, 512 F.3d

1204 (9th Cir. 2008).  In that case, Plumlee believed that the Washoe County Public Defender

had leaked confidential information to another suspect and that Allison, the deputy public

defender assigned to his case, who had applied to the district attorney's office, provided

confidential information to that office.  Plumlee also began to distrust Gregory, his new public

1  defender, after Gregory entered into plea negotiations without the petitioner's prior approval.

2  Ultimately, Gregory sought to have the public defender's office relieved because of Plumlee's

3  general distrust of the office.  After a hearing, the trial court denied the motion and denied

4  Plumlee's later motion for the appointment of new counsel.  Plumlee waived counsel and

5  proceeded to trial pro se.  Id. at 1206-07.

6         On state habeas, the trial court held a hearing and found that no one from the

7  public defender's office had leaked confidential information and that if Gregory had entered into

8  plea negotiations, he did so "in compliance with ethical rules."  Id. at 1208.  On federal habeas,

9  Plumlee renewed his challenge to the court's refusal to appoint new counsel.  The Ninth Circuit

10  observed that the state court's factual findings were supported by the record and were entitled to

11  the presumption of correctness, which Plumlee had not rebutted by clear and convincing

12  evidence.  Id. at 1209; 28 U.S.C. § 2254(d)(2).  The court then rejected Plumlee's argument that

13  his subjective belief that the public defender's office was not acting ethically and in his best

14  interest was a sufficient basis for replacing the public defender's office, noting there is no Sixth

15  Amendment violation "when a defendant is represented by a lawyer free of any actual conflicts of

16  interest, but with whom the defendant refuses to cooperate because of dislike and distrust.

17  Indeed, *Morris v. Slappy* is to the contrary."  It also noted that Plumlee had failed to demonstrate

18  that his attorneys acted unreasonably as defined by Strickland v. Washington.[6]  Id. at 1211.

19         The instant case is distinguishable because Ruffcorn did state on the record that

20  petitioner had asked him to invoke the competency procedures in California Penal Code § 1368.

21  However, this case is like Plumlee in that the state courts have made a factual finding that

22  Ruffcorn did so at petitioner's behest.  See RT 298-299; People v. Stein, 2006 WL 3493052 at 4.

23  /////

24  /////

25  ───────────────

26         [6] 466 U.S. 668 (1984).

1    Petitioner protests, in essence, that this factual finding is not supported by the

2 record.  He argues Ruffcorn did not claim he had acted at petitioner's behest until the second

3 Marsden hearing, eight days after the alleged betrayal, and then only in response to Judge

4 McEachen's "coaching or suggestion."  Addendum at 6.  First, petitioner's characterization of

5 Ruffcorn's explanation coming only in response to the court's suggestion is incorrect: as the

6 passage cited above shows, Ruffcorn explained he had put the request on the record at

7 petitioner's behest before Judge McEachen found that Ruffcorn had acted "[a]t Mr. Stein's

8 request. . . ."  RT 299.  Second, in the hearing of February 4, Ruffcorn addressed the issue

9 obliquely when he said he had acted ethically to be effective in representation.  RT 282.  Third,

10 petitioner has not explained how any delay in addressing the alleged breach more fully had any

11 impact on the ultimate resolution of the issue or how it otherwise undercuts the credibility of the

12 trial court's finding.

13    Petitioner also argues the finding is not supported because it is "common practice"

14 for a lawyer to obtain a written waiver before revealing any private communication and because

15 "it is also standard practice" to preface a request made explicitly on behalf of a client with

16 something like "my client has asked me to request. . . ."  Addendum at 7.  He has cited nothing

17 for these broad propositions.  He has, however, cited one example when Ruffcorn in fact used the

18 prefatory language when informing the court that "my client has asked me to request the

19 continuance."  RT 512.  This one example does not constitute clear and convincing evidence that

20 Ruffcorn's comment about the 1368 proceedings was not made at petitioner's direction.  In

21 addition, to the extent petitioner suggests that all other such requests were preceded by an

22 explanation that they were made at petitioner's direction, he has not cited to the record.  This

23 court is not required, and hereby declines, to comb the record in order to develop an argument for

24 petitioner.  See Stuard v. Stewart, 401 F.3d 1064, 1066-67 (9th Cir. 2005).

25 /////

26 /////

16

1          Moreover, even if the revelation was made without petitioner's consent, he has

2   not shown his defense was prejudiced by the revelation.  Young, 482 F.2d at 995.  It is true that

3   during petitioner's motions to proceed in propria persona, the court mused that the 1368 request

4   was "a delay tactic" or was part of a pattern of delay tactics.  RT 273, 452.  This was not the only

5   reason the court ultimately deemed the motions as a tactic for delay; in fact, the courts noted that

6   "the record itself over the past few years speaks of the delays generated by Mr. Stein."  RT 273,

7   see also RT 452.  Accordingly, petitioner cannot show that the disclosure damaged his defense.

8          With little argument, petitioner also claims that the court erred in denying his

9   Marsden motions because counsel had not undertaken a thorough investigation, had not visited

10  petitioner in the jail, refused to object when the trial court coached a witness, laughed at

11  petitioner and said petitioner was going to prison, and failed to provide transcripts of the victims'

12  statements.  Addendum at 4-5.

13         As noted above, the trial court determined that Ruffcorn had visited petitioner in

14  the jail seven times.  RT 286, 288.[7]  To the extent that petitioner's lack of trust flowed from what

15  actions Ruffcorn did and did not undertake during the course of the representation, this does not

16  establish a Sixth Amendment violation, for the conflict "arose over decisions that are committed

17  to the judgment of the attorney and not the client."  Schell, 218 F.3d at 1026.  To the extent that

18  the lack of trust stemmed from Ruffcorn's efforts to settle the case and his recognition of his

19  client's bleak chances at trial and the potential of a long sentence following conviction, the

20  court's refusal to replace Ruffcorn did not violate petitioner's rights:

21              The starting point for effective representation is a realistic
                assessment of the prospects of success in light of the risks of
22              failure.  It is precisely this balancing process which leads many
                defense lawyers to advise their clients to enter plea negotiations.

23

24  _____

25      [7]  Some of petitioner's other complaints, not specifically raised in this petition but raised
    in the hearing, were undercut by the record.  For example, petitioner complained that Ruffcorn
26  did not pursue his right to a speedy trial.  RT 297, 301.  The record reflects, however, that
    Ruffcorn litigated a motion to dismiss for denial of speedy trial.  See, e.g., RT 176.

1    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3    [T]hat a criminal defendant views this sort of frank advice as
     prejudgment of guilt does not thereby convert good representation
4    into good cause.

5    McKee v. Harris, 649 F.2d 927, 932 (2d Cir. 1981).

6              Finally, although the trial court made no explicit ruling on petitioner's complaint

7    that Ruffcorn had laughed at him and said the gig was up, it did find that petitioner had "been

8    well served by Mr. Ruffcorn."  RT 491.  After reviewing the record, the Court of Appeal found

9    that the trial court "resolved in counsel's favor all credibility questions, such as whether counsel

10   . . . made disparaging comments to him."  People v. Stein, 2006 WL 3493052 at 4.  This court is

11   bound by the Court of Appeal's explicit factual determination.  See Avila v. Roe, 298 F.3d 750,

12   754 n.4 (9th Cir. 2002).  Petitioner makes no attempt to show that this finding is erroneous.

13   IV.  Motions For Self-Representation

14        A.  January 31/February 1 Motion

15             On February 1, Judge Curle addressed the Faretta[8] motion made at the close of

16   business on the preceding day.  RT 266.  Petitioner told the court that "if I'm going to defend

17   myself, I would need reasonable access to the law library."  RT 267-268.  Attorney Ruffcorn

18   elaborated that the Faretta waiver form stated that petitioner would not be given extra library

19   privileges beyond those available to those representing themselves and that he would need more

20   access.  RT 269.  The court told petitioner there would "be no special favors, no special benefits

21   given to Mr. Stein because he chooses to represent himself."  Id.

22   /////

23   /////

24

25   _____

26        [8]  Faretta v. California, 422 U.S. 806 (1975)

1     When the court mentioned the February 8[9] trial date, petitioner said that a week

2  was "not adequate time to prepare a defense" and that he would request a continuance if allowed

3  to represent himself.  RT 269-270.

4     The court then explored petitioner's educational attainment in Australia and his

5  familiarity with the American justice system.  RT 270-272.

6     The court then said:

7     . . . [H]e's not an individual who could represent himself. . . . That
      is based upon his lack of advanced education, . . . .and the fact he's
8     been in this country, even including custodial time, three and a half
      years total. . . .

9

      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

10
      . . . And to the other side of the coin, I'm concerned that his desire
11    to represent himself is based more on a desire to delay the February
      8 jury trial.

12
      And I think that the record itself over the past few years speaks of the
13    delays generated by Mr. Stein.  The most recent being his attempt to have
      his counsel declare him 1368 as of late yesterday, which obviously paints
14    the court in an odd position, that I have a defendant saying I want to be
      declared incompetent and then two minutes later I want to be declared
15    competent enough to represent myself.  I look upon his 1368 attempt as a
      delay tactic, not as an indication that he's unable to assist counsel.

16
      So all in all my decision is going to be that his request to represent
17    himself in pro per is going to be denied, and that is based on both
      of these positions that are independent of each other; one that he
18    hasn't demonstrated enough competency with American
      jurisprudence; and number two, that I think it all in all is a delaying
19    tactic.

20  RT 272-273.

21  /////

22  /////

23  /////

24  /////

25  _____
      [9]  The transcript reads "February 28," but from the rest of the discussion, this appears to
26  be a typographical error.

1   Petitioner challenged this denial in the Court of Appeal, which rejected the claim:

2   First, the motion was not timely. Moreover, <u>Faretta</u> motions made
    just prior to the start of trial are properly regarded as untimely if, as
3   here, they are accompanied by a request for a continuance.  And, as
    the trial court properly indicated, a motion for self-representation
4   made """"for the purpose of delay or to frustrate the orderly
    administration of justice may be denied.""""  The court here could
5   properly conclude defendant's motion was made for purposes of
    delay in light of defendant's several prior <u>Marsden</u> motions, and the
6   fact that this <u>Faretta</u> motion was made immediately after defense
    counsel had refused defendant's suggestion that he announce doubt
7   as to defendant's competence, and had refused to file a petition for
    writ of habeas corpus.

8

9   <u>People v. Stein</u>, 2006 WL 3493052 at 5-6 (internal citations omitted).

10      B.  <u>Hearing of February 23 and 28 and March 4, 2005</u>

11      Counsel informed the court that petitioner would not be able to receive all the

12  benefits of the no contest plea he entered on February 8, because it was not legally possible for

13  him to reserve the right to challenge the speedy trial issue following a plea.  RT 420.  The court

14  thus allowed petitioner to withdraw the no contest plea, but preserve the agreed-upon sentence

15  and his right to appeal by proceeding to a court trial on stipulated facts.  RT 421.

16      When asked if that was agreeable to him, petitioner said he wanted the court to

17  know he was ill and "suffering diminished responsibility because of a debilitations (sic)

18  influenza, which Mr. Ruffcorn was made aware of."  RT 422.  The court observed that

19  petitioner's representation was "contrary to express assertions you made to me in response to my

20  inquiry on February 8th. So, this is news to me. . . ."  <u>Id</u>.

21      Petitioner then told the court he wanted to represent himself and proceed to jury

22  trial.  The court asked petitioner to discuss this with Mr. Ruffcorn and continued the hearing until

23  February 28.  RT 422-426.

24  /////

25  /////

26  /////

1    At the further hearing, petitioner stuck by his desire to withdraw his no-contest

2  plea and represent himself.  The prosecutor said she could not agree to the withdrawal of the plea

3  without a formal motion and a chance to research the issue.  The court agreed to the request and

4  scheduled the hearing for Department One.  It observed:

5           . . . There were representations made – Mr. Stein has made
           representations that I know are contrary to fact in his last
6           appearance as far as his being ill and he wasn't able to voluntarily
           enter his plea; he was too sick to know what he was doing.
7           Obviously, that is contrary to his statements to this Court.  He also
           made representations that he was denied previously a submitted
8           Faretta motion because he wasn't a high school graduate.  I have
           no idea whether that's true, but based on the record with respect to
9           Mr. Stein's factual accuracy, I think that's something that would
           have to go back to . . . Judge Curle for determination and hearing
10           on the motion.

11  RT 431-432.  After further discussion, however, Judge McEachen agreed it was appropriate for

12  him to resolve the motions because he had taken the guilty plea.  RT 434-435.  The court then

13  continued the matter for ruling so that he could secure a transcript of the earlier <u>Faretta</u> motion.

14  <u>Id</u>.

15    The parties reconvened on March 4, 2005.  The court reviewed petitioner's history

16  of seeking to replace every lawyer appointed to represent him, except for the one firm that

17  withdrew because of a conflict of interest.  RT 442-443.  In addition, these requests were

18  frequently made "within two weeks of trial or actually in the trial department."  RT 443.  The

19  court again mentioned petitioner's claim that he was ill when he entered the no contest plea on

20  February 8, "despite assurances to the court at the time of the plea that he was in full command of

21  his mental faculties, not suffering from impaired judgment. . . ."  It added that petitioner "has

22  given a very, very thorough record of actions of not easily proceeding – desiring to proceed to

23  trial, although claiming he has been denied his right to a speedy trial."  RT 443.

24  /////

25  /////

26  /////

1    The court ultimately denied the request:

2        You have been disruptive in consistently seeking to have every
         attorney appointed to represent you with the exception of Mr.
3        Suter's firm who you really didn't have . . . .a chance to do so, so
         the prior issue of your proclivity to seek , to change counsel weighs
4        heavily against you because you are a man who just wouldn't be
         happy with any attorney representing you, and I just can conclude
5        based on the number of Marsden hearings, the court bending over
         backwards granting you new attorneys ultimately, many of these
6        Marsdens were granted not because of what the attorney did, but
         because of your actions in filing complaints against the attorney
7        with the state bar. . . . [E]ven Mr. Gorder, who is as professional as
         any attorney who practices law in the county, couldn't continue to
8        represent you because of a total breakdown in attorney-client
         relationship which you have created, and further, your persistent
9        seeking to disrupt the proceedings procedurally by having one
         attorney come in and this rotation . . . this is late.  It's too late.
10
         You pled no contest to six felony counts. . . . and then you turn
11       around at the next hearing after an exhaustive voir dire and
         ascertainment, yes, you were fully on board with pleading no
12       contest, resolving the case; that you were in full possession of your
         mental faculties, you turn around at the next appearance and say,
13       hey, I was sick, Judge, and I was ill and I wasn't competent to enter
         my plea. . . . You have sought through your attorney to inject
14       mental competence, the initiation of 1368 proceedings when your
         attorney didn't agree with that assessment, did not have a doubt.  I
15       haven't seen anything that leads me to question your mental
         competence.  You have always given every evidence of a person
16       who knows exactly what he is trying to do, and that is delay these
         proceedings, and you have done that admirably.
17
         So these are late. . . .  It's late, untimely, and . . . the motion is
18       denied.

19   RT  450-452.  The Court of Appeal affirmed this ruling:

20       As we noted above, a trial court may deny a motion for
         self-representation made ""''for the purpose of delay or to frustrate
21       the orderly administration of justice,''"" and the record supports the
         court's conclusion that defendant's repeated efforts to substitute
22       counsel or to represent himself were nothing more than attempts to
         delay trial. There was no error.
23

24   People v. Stein, 2006 WL 3493052 at 6 (internal citations omitted).

25   /////

26   /////

22

1        C.  Analysis

2            In Faretta v. California, 422 U.S. 806 (1975), the Supreme Court held that a

3    criminal defendant has a Sixth Amendment right to represent himself at trial after a knowing and

4    voluntary waiver of the right to counsel and a trial court lacks discretion to deny a request so long

5    as it is knowing, voluntary, timely, unequivocal, and not interposed for purposes of delay. Id. at

6    835; United States v. Erskine, 355 F.3d 1161, 1167 (9th Cir. 2004).

7            The trial court denied petitioner's first Faretta motion because it doubted his

8    ability to represent himself and because it believed that the motion was made for purposes of

9    delay. RT 272-273.  As petitioner argues, a defendant's ability to represent himself is not a

10   proper basis for the denial of a Faretta motion.  Addendum at 11; Hirschfield v. Payne 420 F.3d

11   922, 928 (9th Cir. 2005).  However, the court also found that the motion was made for purposes

12   of delay and the Court of Appeal found, in addition, that the motion was not timely, a finding it

13   was free to make so long as it was supported by the record.  Marshall v. Taylor, 395 F.3d 1058,

14   1061 (9th Cir. 2005).  In addition, the trial court denied petitioner's second motion because it

15   found the motion was made for purposes of delay and was untimely; the Court of Appeal upheld

16   this denial, finding that the second motion was made for purposes of delay.

17           In Marshall, the Ninth Circuit explored what law was clearly established for

18   AEDPA purposes when a Faretta motion is denied as untimely.  The court observed that while

19   "Faretta clearly established some timing element, . . . we still do not know the precise contours

20   of that element.  At most we know that Faretta requests made 'weeks before trial' are timely."

21   Id. at 1061.  Because of this imprecision, other courts are free to establish their own timeliness

22   rules "as long as their standards comport with the Supreme Court's holding that a request 'weeks

23   before trial' is timely."  Id.  The court found that California's rule on timeliness–that a request

24   must be made "a reasonable amount of time before trial"–, and its application in the case under

25   consideration, was not an unreasonable application of Faretta.  Id.

26   /////

1        In this case, the state Court of Appeal found that petitioner's first motion, made a

2 week before the date set for trial was untimely.[10]  Because this request was made a week, rather

3 than weeks, before trial, the Court of Appeal's determination was not an unreasonable

4 application of clearly established federal law.

5        In addition, both motions were denied because the courts found they were made

6 for the purposes of delay.  Petitioner argues that these findings were made "without supporting

7 evidence."  Traverse at 5-6.  However, in determining whether a Faretta motion has been made

8 for purposes of delay, a court must examine the totality of the circumstances, which the state trial

9 and appellate courts did.  Avila v. Roe, 298 F.3d 750, 753 (9th Cir. 2002).

10        As the courts observed, the first motion was made just after trial counsel had

11 refused petitioner's request to declare a doubt as to his competence and refused to file a writ for

12 petitioner; the trial court also relied on petitioner's earlier attempts to delay the proceedings.

13 RT 262-263, 272-273.

14        Moreover, as a basis for the denial of the second Faretta motion, the trial court

15 catalogued petitioner's many Marsden motions, his attempt to withdraw his waiver of

16 preliminary hearing and his claim that the no-contest plea was entered when he was ill, a claim

17 rebutted by the record of the plea colloquy.  As the Ninth Circuit has found, a defendant's

18 frequent requests to substitute counsel, made close to trial, may support a finding that a Faretta

19 motion has been made for purposes of delay.  Hirschfield, 420 F.3d at 927.  The record of the

20 instant proceedings–including the history of petitioner's Marsden motions and his request that his

21 lawyer file writs on his behalf – supports the finding.  Accordingly, the state courts' rulings were

22 neither an unreasonable application of clearly established state law nor an unreasonable

23 determination of the facts.

24

25        [10]  Petitioner suggests this is insufficient because the trial did not begin on February 8.
   Addendum at 11.  This is disingenuous, however, because petitioner entered a no contest plea on
26 that day.  CT 489.

1    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

2  a writ of habeas corpus be denied.

3    These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5  days after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8  shall be served and filed within ten days after service of the objections.  The parties are advised

9  that failure to file objections within the specified time may waive the right to appeal the District

10  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  DATED:  September 23, 2009.

12

13  _____

14  U.S. MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26  2 stei1592.157

25